WESTERLIN & CAMPBELL CO. *v.* DETROIT MILLING CO.

1. CORPORATIONS — FOREIGN CORPORATIONS—VALID CONTRACTS EX-
ECUTED OUTSIDE STATE NOT INVALID BECAUSE OF ILLEGAL BUSI-
NESS DONE WITHIN STATE.

    Although a foreign corporation was doing business in
Michigan without securing a license in compliance with
Comp. Laws Supp. 1922, § 9053 [164-168], a valid contract
executed by it outside the State was not thereby rendered
invalid, since the act (section 9053 [166]) strikes at con-
tracts executed within the State and not those executed
elsewhere.[1]

2. COURTS—INTERSTATE COMMERCE—STATE COURTS BOUND BY DE-
CISIONS OF FEDERAL SUPREME COURT.

    The Federal Constitution protects contracts made in inter-
state commerce, no matter where made, and upon ques-
tions of interstate commerce the State courts are bound
by the holdings of the Supreme Court of the United States.[2]

3. COMMERCE—INTERSTATE COMMERCE NOT SUBJECT TO STATE REGU-
LATION.

    A contract by a foreign corporation, executed outside of
the State, for the sale to a domestic corporation and
shipment into the State of a refrigerating machine, was
a contract in interstate commerce, and it did not lose its
character as such and become burdened by provisions of
State statutes because it contained a provision for fur-
nishing an erecting engineer at the expense of the pur-
chaser.[3]

4. APPEAL AND ERROR—VENUE—ALLEGATION ADMITTED IN ANSWER
MAY NOT BE QUESTIONED ON APPEAL.

    Where the bill alleged, and the answer admitted, that
defendant corporation's place of business was in the county
in which the suit was brought, it may not urge, on appeal,
that its place of business was in another county, and that
the suit should have been brought there.[4]

[1]Corporations, 14a C. J. § 4013; [2]Commerce, 12 C. J. § 20
(Anno); Corporations, 14a C. J. § 3992; Courts, 15 C. J. § 318;
[3]Corporations, 14a C. J. § 3993; [4]Appeal and Error, 3 C. J. §§
629, 661.

5. CHATTEL MORTGAGES — VALID AS BETWEEN ORIGINAL PARTIES WHETHER RECORDED OR NOT—MAY BE FORECLOSED IN EQUITY.
As between the original parties, a chattel mortgage is valid whether recorded or not, and the fact that it is not recorded is no impediment to its foreclosure in equity.[5]

Appeal from Lenawee; Hart (Burton L.), J. Submitted October 14, 1925. (Docket No. 75.) Decided December 22, 1925.

Bill by Westerlin & Campbell Company against the Detroit Milling Company to foreclose a lien for the balance due on the purchase price of a machine. From a decree for plaintiff, defendant appeals. Affirmed.

*Baldwin & Alexander* and *Scott, Bancroft, Martin & MacLeish,* for plaintiff.
*Barbour & Martin* and *James H. Baker,* for defendant.

FELLOWS, J. Plaintiff is an Illinois corporation which has not complied with the provisions of part 5, chap. 1, Act No. 84, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 9053 [164-168]). It entered into a contract at Chicago with defendant to sell it a refrigerating machine of the York type to be shipped to defendant at Adrian f. o. b. Chicago. The contract provided for the furnishing of an erecting engineer at the option of defendant; his services and expenses to be paid for by defendant. The machine was shipped and was installed. Half of the purchase price has been paid and this bill is filed to foreclose plaintiff's lien for the balance. There is no defense on the merits to plaintiff's claim and the case presents solely questions of law.

The proofs show that plaintiff maintains a branch

[5]Chattel Mortgages, 11 C. J. § 189.
233—Mich.—25.

agency at Detroit where a small amount of stock is carried for use in emergencies.    Doubtless its activities at Detroit are such as to fall within the provisions of the act, but its violation of the act at Detroit does not render invalid a contract executed outside the State and admittedly valid where executed.    The act strikes at contracts executed within the State, not those executed elsewhere; its language is (part 5, chap. 1, § 3):

"No foreign corporation shall be capable of making a valid contract in this State until it shall have fully complied with the requirements of the laws of this State with respect thereto, and at the time holds an unrevoked certificate to that effect from the secretary of State."

And the Federal Constitution protects its contracts made in interstate commerce, no matter where made. The statute and its predecessors of similar purport have been before this court on numerous occasions. We shall consider but two of our own cases; in the margin[1] will be found a list of our cases which we have examined.    The facts vary in the different cases but in all of them where the question has arisen we have recognized that upon the question of interstate commerce we are bound by the holdings of the Supreme Court of the United States.

If this contract, executed in Chicago, went no fur-

[1] *Neyens* v. *Worthington*, 150 Mich. 580 (18 L. R. A. [N. S.] 142); *Haughton Elevator & Machine Co.* v. *Detroit Candy Co.*, 156 Mich. 25; *Imperial Curtain Co.* v. *Jacob*, 163 Mich. 72; *Despres, Bridges & Noel* v. *Zierleyn*, 163 Mich. 399; *Nernst Lamp Co.* v. *Conrad*, 165 Mich. 604; *E. A. Lange Medical Co.* v. *Brace*, 186 Mich. 453; *Standard Fashion Co.* v. *Cummings*, 187 Mich. 196 (L. R. A. 1916F, 329, Ann. Cas. 1916E, 413); *Power Specialty Co.* v. *Michigan Power Co.*, 190 Mich. 699; *B. F. Sturtevant Co.* v. *Leitelt Iron Works*, 196 Mich. 552; *Rex Beach Pictures Co.* v. *Garson Productions*, 209 Mich. 692; *Decorators Supply Co.* v. *Chaussee*, 211 Mich. 302; *Levin* v. *Fischer*, 217 Mich. 681; *Toledo Furnace Co.* v. *Lansing Co.*, 220 Mich. 143; *Republic Acceptance Corporation* v. *Bennett*, 220 Mich. 249; *Rath Packing Co.* v. *Cold Storage Co.*, 222 Mich. 315; *W. T. Rawleigh Co.* v. *Trerice*, 224 Mich. 420; *Harvard Co.* v. *Himmelein*, 226 Mich. 691.

ther than to provide for the sale of the refrigerating machine and its shipment to defendant at Adrian f. o. b. Chicago, it would under all the authorities be a transaction in interstate commerce and beyond the power of the State to directly burden. Does the provision for furnishing an erecting engineer at the expense of defendant deprive it of that character? This question must be answered in the negative upon the authority of a recent decision of the Supreme Court of the United States to which we shall presently refer. Before taking up that case we should consider two of our own cases. *Decorators Supply Co.* v. *Chaussee,* 211 Mich. 302, is clearly distinguishable from the instant case. The contract in that case required the doing of the work in this State as well as furnishing the material for the job. Other concerns located in the State did the same kind of work and there was no such "intrinsic or peculiar quality or inherent complexity" in the article sold as would prevent its sale unless erected by the vendor and we, therefore, followed *Browning* v. *City of Waycross,* 233 U. S. 16 (34 Sup. Ct. 578). But in *Power Specialty Co.* v. *Michigan Power Co.,* 190 Mich. 699, we definitely recognized the rule which was later announced by the Federal court in the case which controls this one and we there said, speaking through Mr. Justice STONE:

"We think that the plaintiff has failed to show the necessity of itself installing these superheaters as an essential requisite to the sale of them. If such were the case, then, clearly, the State could not hamper or place it in a strait-jacket so as to destroy the possibility of itself doing business of an inherently interstate commerce character."

Rarely do we find a case so squarely in point as is *York Manfg. Co.* v. *Colley,* 247 U. S. 21 (38 Sup. Ct. 430, 11 A. L. R. 611). Indeed the refrigerating machine there sold was the same make as here sold

(York) and it was sold under a like contract to the one before us with the same provision as to services of an engineer. The opinion was written by Chief Justice White who also wrote the *Waycross Case.* Speaking of this provision found in both contracts, he said:

"The only possible question open therefore is, was the particular provision of the contract for the service of an engineer to assemble and erect the machinery in question at the point of destination and to practically test its efficiency before complete delivery relevant and appropriate to the interstate sale of the machinery? When the controversy is thus brought in last analysis to this issue there would seem to be no room for any but an affirmative answer. Generically this must be unless it can be said that an agreement to direct the assembling and supervision of machinery whose intrinsic value largely depends upon its being united and made operative as a whole is not appropriate to its sale. The consequence of such a ruling if made in this case would be particularly emphasized by a consideration of the functions of the machinery composing the plant which was sold, of its complexity, of the necessity of its aggregation and unison with mechanical skill and precision in order that the result of the contract of sale—the ice plant purchased—might come into existence. In its essential principle therefore the case is governed by *Caldwell* v. *North Carolina,* 187 U. S. 622 (23 Sup. Ct. 229) ; *Rearick* v. *Pennsylvania,* 203 U. S. 507 (27 Sup. Ct. 159) ; and *Dozier* v. *Alabama,* 218 U. S. 124 (30 Sup. Ct. 649, 28 L. R. A. [N. S.] 264). In fact those cases were relied upon in the *Waycross Case* as supporting the contention that a mere agreement for the erection of lightning rods in a contract made concerning the shipment of such rods in interstate commerce caused the act of erection to be itself interstate commerce. But the basis upon which the cases were held to be not apposite, that is the local characteristic of the work of putting up lightning rods, not only demonstrates beyond doubt the mistake concerning the ruling as to the *Waycross Case* which was below committed, but serves unerringly to establish the

soundness of the distinction by which the particular question before us is brought within the reach of interstate commerce."

Following this decision, it must be held that the transaction here under consideration was in interstate commerce and therefore not burdened by the provisions of Act No. 84, Pub. Acts 1921.

It is said in the brief that defendant's place of business is at Detroit in Wayne county, and it is urged that the case should not have been brought in Lenawee county. There is no testimony in the record on this subject, but the bill alleges that defendant is a Michigan corporation having its office and place of business at Adrian, Lenawee county. This allegation is admitted in the answer. Under these circumstances the question is not before us.

Defendant's counsel insist that under our holding in *Young* v. *Phillips*, 203 Mich. 566, and kindred cases, the provisions of the instrument before us sought to be enforced must, as to such provisions, be treated as a chattel mortgage, and, not having been recorded, the instrument is void. Plaintiff's counsel seem to concede that it is a chattel mortgage and we will so treat it for the purposes of this case. But this is a proceeding between the original parties, no other interests are involved. As between the original parties the mortgage is valid whether recorded or not, and being a mortgage we perceive no impediment to its foreclosure in equity.

The decree will be affirmed, with costs of this court.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.